UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X

TERRENCE PODOLSKY,

                       Plaintiff,

       -v-

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                       Defendant.
----------------------------------------------------------X

No. 12 Civ. 6544 (RA) (JLC)

MEMORANDUM
OPINION AND ORDER

USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3/31/14

RONNIE ABRAMS, United States District Judge:

Plaintiff Terrence Podolsky applied for a period of disability, disability insurance benefits, and supplemental security income from the Social Security Administration, alleging disability beginning May 2, 2008. The Commissioner of Social Security ("Commissioner") denied his application. Podolsky brings this action pursuant to 42 U.S.C. § 405(g) and 1383(c)(3) to obtain judicial review of the Commissioner's decision. The parties have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).

Before the Court is the September 26, 2013 Report and Recommendation ("Report") of Magistrate Judge James L. Cott, which recommends that the Court deny Podolsky's motion and grant the Commissioner's cross-motion, as well as Podolsky's timely filed objections.

For the reasons set forth below, the Court adopts the thorough and well reasoned Report. Accordingly, Podolsky's motion for judgment on the pleadings is denied, and the Commissioner's cross-motion is granted.

**STANDARD OF REVIEW**

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). "The district court

may adopt those portions of a report and recommendation to which no objections have been made, as long as no clear error is apparent from the face of the record." Francis v. A & E Stores, Inc., No. 06 Civ. 1638 (CS) (GAY), 2008 WL 4619858, at *1 (S.D.N.Y. Oct. 16, 2008). "[R]eview under the 'clearly erroneous' standard is significantly deferential, requiring a 'definite and firm conviction that a mistake has been committed.'" Concrete Pipe & Products of California, Inc. v. Constr. Laborers Pension Trust for S. California, 508 U.S. 602, 623 (1993).

Where a party makes specific objections to a report and recommendation, however, the district court must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); see also Fed. R. Civ. P. 72(b)(3). "[O]bjections that are merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original petition will not suffice to invoke *de novo* review of the magistrate's recommendations." Vega v. Artuz, No. 97 Civ. 3775 (LTS) (JCF), 2002 WL 31174466, at *1 (S.D.N.Y. Sept. 30, 2002).

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (quoting 42 U.S.C. § 405(g)). The substantial evidence standard is "a very deferential standard of review—even more so than the 'clearly erroneous' standard"—and permits the Court to reject the ALJ's factual findings "'only if a reasonable factfinder would *have to conclude otherwise.*'" Brault v. Soc. Sec. Admin., Com'r, 683 F.3d 443, 448 (2d Cir. 2012) (quoting Warren v. Shalala, 29 F.3d 1287, 1290 (8th Cir.1994)).

2

## DISCUSSION

### A. Podolsky's Use of a Cane

Podolsky's primary objection to the Report is that "the Magistrate incorrectly states that there was no proof that Mr. Podolsky's use of a cane was medically necessary for walking or that it was required other than for prolonged ambulation." (Pl. Obj. 3.) His argument appears to be that Podolsky's reliance on his cane demonstrates that he does not have "the capacity to perform the standing and walking required of sedentary work" and that, in conjunction with the "limitations in the use of his right arm," the cane "limits the sedentary occupational base" available to him. (Id. at 5, 6.) This objection and its subsidiary arguments are unavailing.

### 1. Medical Necessity

According to the Report, "[t]he record does not reflect that Podolsky's use of a cane was medically necessary except for prolonged ambulation." (Report 29.) In objecting to this conclusion, Podolsky relies on evidence that his treating physician, Dr. Arnold Wilson, recommended that Podolsky use a cane. Although he never explicitly stated that it was medically necessary, on April 3, 2008, Dr. Wilson wrote that Podolsky "is to continue ambulating with a cane and will continue to work." (Administrative Record ("AR") 401.) Dr. Wilson did not advise Podolsky further on his use of the cane until April 23, 2009, when he wrote, "I have encouraged the patient to gradually stop using his cane." (Id. at 387.) The only other doctor to recommend a cane was Dr. Louis Tranese, who reported on February 15, 2011 that "[i]n [his] opinion, [the cane] [wa]s medically necessary at this time only for long distance community ambulation." (Id. at 564.)

Social Security Ruling ("SSR") 96-9p provides guidance concerning, among other things, "[m]edically required hand-held assistive device[s]." SSR 96-9p, 1996 WL 374185, at *7. That

3

ruling states that in order

> [t]o find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information).

Id.

Dr. Wilson's records suggest that it may have been medically necessary for Podolsky to walk with a cane between April 2008 and April 2009, even though Dr. Wilson did not explicitly make such a finding. After April 2009, no doctor opined that the cane was medically necessary except for long-distance ambulation. As explained below, however, regardless of when and to what extent the cane was medically necessary, the ALJ did not err in finding that Podolsky was not disabled.

### 2. Standing and Walking Requirements

Podolsky observes that "the work base . . . requires approximately two hours of standing and walking" and suggests that his use of a cane is relevant to this analysis. (Pl. Obj. 4.) SSR 96-9p provides that "[i]f an individual can stand and walk for a total of slightly less than 2 hours per 8-hour workday, this, by itself, would not cause the occupational base to be significantly eroded." 1996 WL 374185, at *6. In any event, the record does not suggest that Podolsky was unable to bear two hours of standing and walking per workday. (See, e.g., Report 30-33.) The only possible exception is a period of several months preceding Podolsky's knee surgery,[1] but this period is of insufficient duration to support a finding of disability. See 42 U.S.C. §

---

[1] Dr. Wilson's notes from April 23, 2008 indicate that Podolsky "states that he . . . has been unable to tolerate short-distance walking and standing." (AR 400.) He advised Podolsky to leave work in May of 2008. (Id. at 399.) That August, however, Dr. Wilson observed that Podolsky "ambulates without difficulty," and by March 4, 2009, he reported only that Podolsky "ha[d] difficulty ambulating upstairs" and "ha[d] difficulty walking up crowded stairways due to time constraints and his cane." (Id. at 388, 394.)

4

423(d)(1)(A) (requiring the "inability to engage in any substantial gainful activity . . . for a continuous period of not less than 12 months"); Correale-Englehart v. Astrue, 687 F. Supp. 2d 396, 434 (S.D.N.Y. 2010) ("[I]f a claimant can return to work in less than one year, []he fails to meet the statutory requirement for disability.").

### 3. Consultation with a Vocational Expert

Podolsky further argues that the ALJ should have consulted a vocational expert because the interaction between Podolsky's need for a cane and the "moderate limitations in the use of his right arm" eroded his sedentary occupational base. (Pl. Obj. 5.) SSR 96-9p explains that

> [s]ince most unskilled sedentary work requires only occasional lifting and carrying of light objects such as ledgers and files and a maximum lifting capacity for only 10 pounds, an individual who uses a medically required hand-held assistive device in one hand may still have the ability to perform the minimal lifting and carrying requirements of many sedentary unskilled occupations with the other hand.

1996 WL 374185, at *7. Podolsky's contention is that when he walks, one hand is occupied with the cane, and the reach of the other hand is limited by his shoulder injury. Although SSR 96-9p suggests that "it may be especially useful to consult a vocational resource" in such a situation, id., Second Circuit precedent makes clear that this was not required.

"[T]he 'mere existence of a nonexertional impairment does not automatically . . . preclude reliance on the [Commissioner's medical-vocational] guidelines.'" Zabala v. Astrue, 595 F.3d 402, 410-11 (2d Cir. 2010) (quoting Bapp v. Bowen, 802 F.2d 601, 603 (2d Cir.1986)). Only "[i]f a claimant has nonexertional limitations that 'significantly limit the range of work permitted by his exertional limitations[]' [is] the ALJ . . . required to consult with a vocational expert." Id. at 410 (quoting Bapp, 802 F.2d at 605). The nonexertional impairment must be "'one that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity.'" Id. at 411 (quoting Bapp, 802 F.2d at 605-06).

The ALJ found that Podolsky was limited in his ability to perform "[f]requent overhead reaching" with his right upper extremity. (AR 27-28.) Reaching is a nonexertional capacity. See SSR 96-9p, 1996 WL 374185, at *5. However, SSR 96-9p does not indicate that frequent overhead reaching is generally a requirement of sedentary work. Indeed, overhead reaching would not normally be required in order to lift and carry "light objects such as ledgers and files." Id. at *7. As will be explained below, the record supports the ALJ's finding that Podolsky had no other nonexertional limitations. Thus, his nonexertional impairment did not significantly narrow his possible range of work, and the ALJ was not required to consult with a vocational expert. See Zabala, 595 F.3d at 410-11.

### 4. The Lack of an Explicit Finding on Medical Necessity

Podolsky also faults the ALJ's decision for "[t]he absence of a specific finding" on whether his cane was medically necessary. (Pl. Obj. 6.) This objection simply reiterates an argument Podolsky made to Judge Cott. (See Report 31-33.) Accordingly, the Court has reviewed the Report for clear error and perceives none. The ALJ considered Podolsky's ability to walk; Podolsky's use of a cane did not compel a finding of disability; and the cases Podolsky has cited do not convince the Court otherwise.

### B. Podolsky's Alleged Right Hand Limitations

Podolsky claims that, in addition to limiting his ability to reach with his right arm, his injuries impaired the use of his right hand and thereby eroded the sedentary occupational base available to him. He identifies no flaw in the well reasoned Report, however, instead choosing to repeat the arguments he presented to Judge Cott nearly verbatim.

Only a "*significant* manipulative limitation of an individual's ability to handle and work with small objects with both hands will result in a significant erosion of the unskilled sedentary

occupational base." SSR 96-9p, 1996 WL 374185, at *8. Having briefed the issue a second time, Podolsky still does not demonstrate that a reasonable factfinder would have to find a significant limitation in his "bilateral manual dexterity." Id. His argument that "Dr. Shah and Wilson made repeated findings of numbness and limitation in the right hand associated with cervical radiculopathy" is misguided. (Pl. Obj. 6.) As the Report thoroughly details, the record contains substantial evidence that Podolsky's injury "only restricted him from pushing, pulling, and overhead reaching" and that he "had either mild limitations or no limitations in his hand strength and usage." (Report 35; see also id. at 34 & n.14, 36.)

Nor are Podolsky's citations to other portions of the record successful. While Dr. Joshi "observed findings of diminished strength of 4/5 in the right upper extremity and diminished grip of 4/5 in the right hand," (Pl. Obj. 7), she also found that "[h]and and finger dexterity [was] intact," (AR 355). Similarly, while Dr. Tranese "observed 'moderate' restriction in performing right upper extremity movements," (Pl. Obj. 7), he noted that "[t]he claimant has no limitations using his hands for fine and gross manual activities" and found "[g]rip strength [to be] 5/5 bilaterally," (AR 564, 566). Consequently, substantial evidence supports the ALJ's conclusion that Podolsky's manual dexterity was not significantly diminished, and the Court adopts this section of the Report in full.

### C. The Adverse Side Effects of Tylenol #3

Finally, Podolsky argues that "Tylenol #3 made it difficult for him to stay focused, think clearly, and remember things," thus preventing him from engaging in sedentary work. (Pl. Obj. 8.) The ALJ determined that his account of these side effects was not credible, and the Court sees no grounds for reversal.

Podolsky argues that, while the Report claims that he reported no side effects from

7

Tylenol #3 on his Social Security Administration forms, the forms list medications other than Tylenol #3. (Id. at 9; AR 148, 310.) Even if he is correct,[2] the ALJ's credibility determination was supported by substantial evidence.

Podolsky rightly notes that Dr. Carl Wilson stated that the codeine in Tylenol #3 was a "sedating pain medication[]" that "*could* impact functional abilities" and "*could* interfere with work activity." (AR 437, 444, 447, 450-51 (emphasis added).) However, Podolsky notified his doctors of such side effects only rarely, if at all, (Report 38), and medical records consistently indicate that he was "fully alert, awake, and oriented" and that his memory and concentration were intact, (AR 225, 241, 261, 272, 290, 347, 350-51, 374, 378, 380, 531, 536). In light of these observations, a reasonable factfinder could conclude that Tylenol #3 was not in fact interfering with Podolsky's mental abilities.[3]

## CONCLUSION

The Court has reviewed *de novo* the portions of the Report to which Podolsky objects and has reviewed the remainder of the Report for clear error. The Court agrees with Judge Cott's recommendations and, accordingly, adopts the Report.

The Clerk of Court is respectfully requested to close the motions pending at docket numbers 12 and 16 and to close the case.

SO ORDERED.

Dated:   March 31, 2014
         New York, New York

Ronnie Abrams
United States District Judge

---

[2] Podolsky reported on these forms that he experienced no side effects from "Acetaminophen." (AR 148, 310.) The Court understands that Tylenol #3 is acetaminophen with codeine. (Id. at 322, 353.)

[3] The Court therefore need not address the significance of Podolsky's college studies or daily activities. (Pl. Obj. 9-10; Def. Resp. 9-10).